## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: | : Bankruptcy No. 18-16913-elf |
| Renee D. Sharpe | : Chapter 13 |
| Debtor | : |
| | : |
| MTGLQ Investors, LP c/o Rushmore Loan | : |
| Management Services | : |
| Movant | : |
| vs. | : |
| Renee D. Sharpe and Frederick Sharpe (Non-filing Co-Debtor) | : |
| Debtor/Respondent | : |
| and | : |
| William C. Miller, Esquire | : |
| Trustee/Respondent | : |

### MOTION FOR RELIEF FROM AUTOMATIC STAY AND CO-DEBTOR STAY UNDER 11 U.S.C. § 362 AND §1301

Movant, by its Attorneys, Hladik, Onorato & Federman, LLP, hereby requests a Termination of the Automatic Stay and leave to proceed with its State Court rights provided under the terms of the Mortgage.

1.    Movant is MTGLQ Investors, LP c/o Rushmore Loan Management Services ("Movant").

2.    Debtor, Renee D. Sharpe ("Debtor") and Frederick Sharpe ("Non-filing Co-Debtor") are the owners of the premises located at 574 E. Lincoln Highway, Coatesville, PA 19320 (the "Property").

3.    William C. Miller, Esquire is the Trustee appointed by the Court.

4.    Debtor filed a Petition for Relief under Chapter 13 of the Bankruptcy Code on October 17, 2018.

5.    Movant is the holder of a mortgage lien on the Property in the original principal amount of $108,000.00, which was recorded on July 16, 2007 (the "Mortgage"). A true and correct copy of the Mortgage is attached hereto as Exhibit "A."

6.    The Mortgage was assigned to Movant by way of a series of written assignments of mortgage, the last of which was recorded on October 03, 2017. A true and correct copy of the assignment of mortgage is attached hereto as Exhibit "B."

7.      Movant has not received the monthly post-petition Mortgage payments from February 01, 2019 through May 01, 2019 in the amount of $1,045.49 each, as well as legal fees and filing costs associated with this motion in the amount of $1,031.00 for a total post-petition arrearage of $5,212.96.

8.      Movant has cause to have the Automatic Stay terminated, in order to permit Movant to complete foreclosure on its Mortgage.

**WHEREFORE,** Movant respectfully requests that this Court enter an Order:

a.      Modifying the Automatic Stay and Co-Debtor Stay under 11 U.S.C. § 362 and §1301 of the Bankruptcy Code with respect to the Property as to permit Movant to foreclose on its Mortgage and allow Movant or any other purchaser at Sheriff's Sale to take legal or consensual action for enforcement of its right to possession of, or title to; and

b.      Granting any other relief that this Court deems equitable and just.

Respectfully Submitted,

Date: 05/30/2019

/s/Danielle Boyle-Ebersole, Esquire
Danielle Boyle-Ebersole, Esquire
Hladik, Onorato & Federman, LLP
298 Wissahickon Avenue
North Wales, PA 19454
Phone 215-855-9521/Fax 215-855-9121
debersole@hoflawgroup.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: | : Bankruptcy No. 18-16913-elf |
| Renee D. Sharpe | : Chapter 13 |
| Debtor | : |
| | : |
| MTGLQ Investors, LP c/o Rushmore Loan | : |
| Management Services | : |
| Movant | : |
| vs. | : |
| Renee D. Sharpe and Frederick Sharpe (Non-filing Co-Debtor) | : |
| Debtor/Respondent | : |
| and | : |
| William C. Miller, Esquire | : |
| Trustee/Respondent | : |

### CERTIFICATION OF SERVICE OF MOTION, RESPONSE DEADLINE AND HEARING DATE

I, Danielle Boyle-Ebersole. Esquire, attorney for Movant, MTGLQ Investors, LP c/o Rushmore Loan Management Services, hereby certify that I served a true and correct copy of the Motion for Relief from Automatic Stay and Notice of Motion, Response Deadline and Hearing Date, by United States Mail, first class, postage prepaid, or Electronic Mail on **05/30/2019** upon the following:

John A. Gagliardi, Esquire
Via ECF
*Attorney for Debtor*

William C. Miller, Esquire
Via ECF
*Trustee*

Renee D. Sharpe
Frederick Sharpe
572 E. Lincoln Highway
Coatesville, PA 19320
Via First Class Mail
*Debtor and Non-filing Co-Debtor*

Dated: 05/30/2019

/s/Danielle Boyle-Ebersole, Esquire
Danielle Boyle-Ebersole, Esquire
Hladik, Onorato & Federman, LLP
298 Wissahickon Avenue
North Wales, PA 19454
Phone 215-855-9521/Fax 215-855-9121
debersole@hoflawgroup.com

# **EXHIBIT A**

PREPARED BY:
OPTION ONE MORTGAGE CORP.
P.O. BOX 57076
IRVINE, CA 92619-7076

RETURN TO

Reliance ab.
Po Ox 702
Spring House Pa.

PROPERTY ADDRESS:

574    E LINCOLN HWY,
COATESVILLE, PA 19320-3414



RECORDER OF DEEDS

Loan Number:
Servicing Number:
Parcel Number:

UPI Number:

RELIANCE ABSTRACT CO

WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORP.
P.O. BOX 57096
IRVINE, CA 92619-7096
(790) 790-3600
ATTN:   RECORDS MANAGEMENT

_____[Space Above This Line For Recording Data]_____

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on  June 27, 2007       . The mortgagor is
FREDERICK SHARPE AND
RENEE SHARPE

("Borrower"). This Security Instrument is given to

                Option One Mortgage Corporation, a California Corporation

which is organized and existing under the laws of      CALIFORNIA                    , and whose
address is
                    3 Ada, Irvine, CA 92618                          ("Lender").
Borrower owes Lender the principal sum of
                            ONE HUNDRED EIGHT THOUSAND
              ... AND NO/100THs            Dollars (U.S.    $108,000.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on July 01, 2037      .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (e) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender the following described property located in
        Chester                        County, Pennsylvania:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

PENNSYLVANIA - Single Family
Page 1 of 10                                                    PAD10011.wp (03-24-05)

Loan Number:                          Servicing Number:                          Date: 06/27/07

which has the address of    574    E LINCOLN HWY,    COATESVILLE

[Street, City]

Pennsylvania            19320-3414        ("Property Address");
                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

Page 2 of 10                                                                PAD10012.wp (03-24-05)

10770994
Page 2 of 16
RELIANCE ABSTRACT        07/16/2007 09:35A    B-7212 P-927

Loan Number:          Servicing Number:          Date: 06/27/07

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or

PAD10013.wp (03-24-05)

10770994
Page 3 of 16
RELIANCE ABSTRACT     07/16/2007 09.35A    B-7212 P-927

Loan Number:                        Servicing Number:                        Date: 06/27/07

restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of

PAD10014.wp (03-24-05)

10770994
Page 4 of 16
RELIANCE ABSTRACT          07/16/2007 09 35A     B-7212 P-927

Loan number: ▮▮▮▮▮▮                Servicing Number: ▮▮▮▮▮▮                Date: 06/27/07

action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

PAD10015.wp (03-24-05)

10770994
Page 5 of 18
RELIANCE ABSTRACT          B-7212 P-927

Loan Number:                          Servicing Number:                          Date: 06/27/07

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.

If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PAD10016.wp (03-24-05)



10770994
Page 6 of 18
B-7212 P-927

Loan Number: ████████        Servicing Number: ████████        Date: 06/27/07

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other (required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and taws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of**

PAD10017.wp (03-24-05)

10770994
Page 7 of 18
B-7212 P-927

RELIANCE ABSTRACT

Loan Number:                          Servicing Number:                          Date: 06/27/07

any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

**23. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**24. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 18 shall extend to one hour prior to the commencement of bidding at a sheriffs sale or other sale pursuant to this Security Instrument.

**25. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**26. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**27. Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

**28. Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

**29. Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

**30. Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**31. Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other

PAD10018.wp (03-24-05)

10770994
Page 8 of 16
RELIANCE ABSTRACT          07/16/2007 09:35A    B-7212 P-927

Loan Number: _____          Servicing Number: _____          Date: 06/27/07

fees and costs of a similar nature not otherwise prohibited by law. Permitted by applicable law, Borrower shall pay to Lender their fees in connection with Lender providing documents or services arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument.

**32. Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**33. Lost, Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

**34. Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

**35. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | ☐ Condominium Rider | [X] 1-4 Family Rider |
| ☐ No Prepayment Penalty Option Rider | ☐ Planned Unit Development Rider | ☐ Occupancy Rider |
| ☐ Other(s) (specify) | | [X] Balloon Rider |

**10770994**
Page 9 of 16
B-7212 P-927

RELIANCE ABSTRACT

PAD10019.wp (03-24-05)

Loan Number: ████████          Servicing Number: ████████          Date: 06/27/07

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____(Seal)          _____(Seal)
                                 -Borrower                                            -Borrower

_____(Seal)          _____(Seal)
                                 -Borrower                                            -Borrower

_____(Seal)          _____(Seal)
FREDERICK    SHARPE              -Borrower                                            -Borrower

_____(Seal)          _____(Seal)
RENEE   SHARPE                  -Borrower                                            -Borrower

**Certificate of Residence**

I, R. J. DiCERBO                                      , do hereby certify that the correct address of
the within-named Mortgagee is
                            3 Ada, Irvine, CA  92618
        Witness my hand this        27th      day of    June                          . 2007      .

                                                                          _____
                                                                                  Agent of Mortgagee

**COMMONWEALTH OF PENNSYLVANIA,** Montgomery                  **County ss:**

        On this, the    27th     day of    June       2007     , before me, the undersigned
officer, personally appeared FREDERICK  SHARPE  AND  RENEE SHARPE

known to me (or satisfactorily proven) to be the personS      whose nameS are  subscribed to the
within instrument and acknowledged that    THEY       executed the same for the purposes herein contained.

        IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires:              ┌─────────────────────────────────────┐
                                    │          NOTARIAL SEAL              │
                                    │        ROBERT J DICERBO             │
                                    │         Notary Public               │
                                    │ LOWER GWYNEDDTWP,MONTGOMERY COUNTY  │
                                    │  My Commission Expires Mar 4, 2008   │
                                    └─────────────────────────────────────┘
                                                                          _____
                                                                                  Title of Officer

PAD10020.wp (03-24-05)

████████████████████
RELIANCE ABSTRACT

10770994
Page: 10 of 16
B-7212 P-927

Loan Number: ▮▮▮▮▮▮▮▮       Servicing Number: ▮▮▮▮▮▮▮▮       Date: 06/27/07

# BALLOON RIDER

This is a BALLOON LOAN. The term of the loan is 50/30 years. This means that while your monthly payment amount is amortized in accordance with a 50 year loan term, the loan is payable in full in THIRTY (30) years from the date the loan is made. As a result, you will be required to repay the entire remaining principal balance, together with accrued interest, late charges, if any, and all advancements made by the lender under the terms of this loan in THIRTY (30) years from the date on which the loan is made.

The lender has no obligation to refinance this loan at the end of its term. Therefore, you may be required to repay the loan out of other assets you may own, or you may have to find another lender willing to refinance the loan.

Assuming this lender or another lender refinances this loan at maturity, you will probably be charged interest at market rates prevailing at that time which may be considerably higher or lower than the interest rate paid on this loan. You may also have to pay some or all of the closing costs normally associated with the new mortgage loan even if you obtain refinancing from the same lender.


_____          _____
FREDERICK   SHARPE           -Borrower                              -Borrower


_____          _____
RENEE   SHARPE               -Borrower                              -Borrower


_____          _____
                             -Borrower                              -Borrower


**MULTISTATE BALLOON RIDER**
Page 1 of 1                                                    USR1091.wp (01-12-07)



10770994
Page 11 of 18
B-7212 P-927

RELIANCE ABSTRACT

Loan Number: [REDACTED]        Servicing Number: [REDACTED]        Date:  06/27/07

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made  June 27, 2007                              ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

574   E LINCOLN HWY,   COATESVILLE, PA 19320-3414

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**The Note** provides for an initial interest rate of        10.850%                    . The
Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first day of   July 01      2009          ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
SIX AND 20/100                              percentage point(s) ( 6.200%    )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family**
Page 1 of 3                                                            USRI0021 (03-08-07)

10770994
Page 12 of 18
RELIANCE ABSTRACT          07/16/2007 09 35A    B-7212 P-927

Loan Number: ▮▮▮▮▮▮▮     Servicing Number: ▮▮▮▮▮▮▮     Date:  06/27/07

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 12.350% or less than    6.200%    . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than      one and a half percentage points (1.5%)
from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than    16.850%    or less than    6.200%    .

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



RELIANCE ABSTRACT     07/18/2007 09:35A     10770994
Page 13 of 18
B-7212 P-927

Loan Number: ▮▮▮▮▮   Servicing Number: ▮▮▮▮▮   Date: 06/27/07

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)            _____(Seal)
FREDERICK   SHARPE                         RENEE   SHARPE

_____(Seal)            _____(Seal)

_____(Seal)            _____(Seal)

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**
Page 3 of 3                                                    USRI0023 (03-08-07)

10770994
Page: 14 of 18
B-7212 P-927
RELIANCE ABSTRACT          07/16/2007 09:35A

Loan Number:               Servicing Number:              Date: 06/27/07

## 1-4 FAMILY RIDER
### Assignment of Rents

THIS 1-4 FAMILY RIDER is made    June 27, 2007                  , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

Option One Mortgage Corporation, a California Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

574    E LINCOLN HWY,    COATESVILLE, PA 19320-3414

(Property Address)

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.**     **ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: Building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B.**     **USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C.**     **SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D.**     **RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Covenant 5.

**E.**     **"BORROWER'S RIGHT TO REINSTATE" DELETED.** Covenant 18 is deleted.

**F.**     **BORROWER'S OCCUPANCY.** Unless lender and Borrower otherwise agree in writing, the first paragraph in Covenant 6 concerning Borrower's occupancy of the property is deleted. All remaining

10770994
Page 15 of 18
B-7212 P-927
RELIANCE ABSTRACT            07/16/2007 09:35A

Loan Number: ▮▮▮▮▮▮           Servicing Number: ▮▮▮▮▮▮           Date: 06/27/07

Covenants and agreements set forth in Covenant 6 shall remain in effect.

**G.   ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph F, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H.   ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of its intention to receive Rents after a default by borrower under the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of its intention to receive Rents to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This Assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.   "ASSIGNMENT OF RENTS" MODIFIED.** Any Covenant of the Security Instrument granting an Assignment of Rents to Lender is superseded by this Rider.

**J.   CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

**MULTISTATE 1-4 FAMILY RIDER**

Page 2 of 3

USR1001.wp (11-19-04)


0770994
page 16 of 16
B-7212 P-927
RELIANCE ABSTRACT           07/16/2007 09:35A

Loan Number: ▇▇▇▇▇▇     Servicing Number: ▇▇▇▇▇▇     Date: 06/27/07

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____     _____
FREDERICK   SHARPE          Borrower                           Borrower


_____     _____
RENEE   SHARPE              Borrower                           Borrower


_____     _____
                            Borrower                           Borrower


**MULTISTATE 1-4 FAMILY RIDER**
Page 3 of 3                                                 USR1001.wp (11-19-04)

10770994
Page 17 of 18
B-7212 P-927
RELIANCE ABSTRACT          07/19/2007 00:354

# EXHIBIT "A"

ALL THAT CERTAIN lot or tract of land upon which is erected the East house of a block of two brick dwelling houses, designated as No. 574 East Lincoln Highway situated in the City (formerly the Borough) of Coatesville, Chester County, Pennsylvania, said lot or tract of land being composed of three adjoining lots or tracts of land, bounded and described together according to a recent survey thereof as follows:

BEGINNING at a point on the South curb line of East Lincoln Highway (formerly East Main Street) opposite the center of the middle dividing partition wall of said block of two brick dwelling houses, and distant 129, feet and 10 ¼ inches West of the West curb line of Sixth Avenue; thence along the said South curb line of East Lincoln Highway, North 80 degrees 49 minutes East 32 feet to a point a corner of land now or late of Donald Ramaley; thence along the same and land now or late of John W. Doan, South 09 degrees 16 minutes East 140 feet to a point in a line of land now or late of John W. Doan; thence along the North end of a 4 ½ foot wide private alley, South 80 degrees 49 minutes West 4 feet and 6 inches; thence along the West line of said private alley, South 09 degrees 16 minutes East 60 feet more or less, to a point in the North line of Harmony Street; thence along the said North line of Harmony Street, South 80 degrees 49 minutes West 27 feet 6 inches to a point a corner of land now or late of Howard Johnson; thence along the same and passing through the center of the middle dividing partition of said block of two brick dwelling houses, North 09 degrees 16 minutes West 200 feet, more or less to the place of beginning.

BOUNDED on the North by the South curb line of East Lincoln Highway; on the East by land now or late of Donald Ramaley, land now or late of John W. Doan and the West line of said private alley; on the South by the North end of said private alley and the North line of Harmony Street; and on the West by land now or late of Howard Johnson.

CONTAINING 6,130 square feet of land, be the same more or less.

Property Parcel Number

10770994
Page: 18 of 18
B-7212 P-927

RELIANCE ABSTRACT

Loan [REDACTED]
Min [REDACTED]

## LOAN MODIFICATION AGREEMENT
(Providing for Freeze-Step Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 1st day of October, 2011 (the "Effective Date"), between FREDERICK SHARPE and RENEE SHARPE (collectively "Borrower") and American Home Mortgage Servicing, Inc. as Servicer ("Loan Servicer"), modifies (1) the mortgage, deed of trust, or security deed (the "Security Instrument") dated June 27, 2007, and (2) the promissory note (the "Note"), bearing the same date as, and secured by, the Security Instrument (Borrower's obligation under the Note, Security Instrument and this Agreement hereinafter referred to as the "Loan"), which covers the real and personal property located at 574 E. LINCOLN HWY, COATESVILLE, PA 19320, more fully described in the Security Instrument and defined therein as the "Property." All capitalized terms in this Agreement shall have the same meanings as set forth in the Note and Security Instrument, unless defined in this Agreement; all schedules and exhibits attached to this Agreement are incorporated into and made part of this Agreement; and all references to this Agreement include the schedules and exhibits.

In consideration of the mutual promises and agreements exchanged, Loan Servicer and Borrower hereto agree that the Note and Security Instrument shall be modified hereby as follows:

1.  As of October 1, 2011, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $173,110.62, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any accrued and unpaid interest and other amounts capitalized as set forth in Schedule "A," attached hereto and made a part hereof. The amount that shall bear interest and amortize in accordance with the terms of this Agreement is referred to herein as the "Amortizing Amount," which may be equal to or less than the New Principal Balance, as specified in paragraph 2 below.

2.  Borrower promises to pay the New Principal Balance, plus interest, to the order of Loan Servicer. The interest rate and monthly payment on Borrower's Note, and the applicable interest change dates and payment due dates, are modified as follows:

| Year | New Interest Rate | Interest Rate Change Date | New Monthly Payment Due Date | New Payment Amount | Number of Payments |
|------|------|------|------|------|------|
| 1-5 | 2.000% | October 01, 2011 | November 01, 2011 | $717.27 | 60 |
| 6 | 3.000% | October 01, 2016 | November 01, 2016 | $788.79 | 12 |
| 7 | 4.000% | October 01, 2017 | November 01, 2017 | $861.05 | 12 |
| 8-26 | 4.125% | October 01, 2018 | November 01, 2018 | $869.91 | 225 |

*plus any amounts due for taxes and insurance, if applicable (see Schedule A)

If the Loan is an adjustable-rate mortgage ("ARM") loan and Borrower receives an ARM adjustment notice prior to the first New Monthly Payment Due Date indicated above, Borrower should ignore such notice and make payments in accordance with this Agreement. If on July 1, 2037 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  Borrower will comply with all covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the Effective Date:
    (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and
    (b)    all terms and provisions of any adjustable rate rider, or other instrument or document (if any) that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

(e)    This Agreement may be signed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Agreement.

6.    To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause, or sentence shall be modified or deleted in such a manner so as to make the Agreement, as so modified, legal and enforceable under applicable law, provided that should such modification or deletion materially diminish the benefit of this Agreement to any of Loan Servicer, Note Holder or Borrower, the Agreement shall be of no force or effect and the relationship of Loan Servicer, Note Holder and Borrower shall be entirely governed by the provisions of the Note and Security Instrument.

7.    This Agreement shall be of no force or effect, and no action will be taken by Loan Servicer to cease collection activities relating to the Loan, unless and until Loan Servicer has received this Agreement, fully executed and initialed by Borrower, no later than October 18, 2011. This Agreement is not considered "received" by Loan Servicer unless and until it has been delivered to Loan Servicer at 4875 Belfort Rd, Jacksonville, FL 32256 and internally date stamped.

---

**NOTICE TO BORROWERS WITH ADJUSTABLE-RATE LOANS:**

For Borrowers with an adjustable rate Loan, please read this notice carefully. In accordance with subparagraphs 3(a) and 3(b) of this Agreement, Borrower understands that the Loan is modified from an adjustable-rate loan to a step-rate loan. An adjustable-rate loan differs from a step-rate loan. With a step-rate loan, the interest rate stays the same during specified intervals as provided under paragraph 2 of this Agreement. With an adjustable-rate loan, the interest rate changes periodically, in relation to an index and a margin, and payments may go up or down accordingly.

IF INTEREST RATES DECREASE, AN ADJUSTABLE-RATE LOAN COULD BE LESS EXPENSIVE OVER A LONG PERIOD THAN A STEP-RATE LOAN. YOU UNDERSTAND THAT BY MODIFYING THIS LOAN TO A STEP-RATE LOAN, YOU ARE FOREGOING THIS POTENTIAL ADVANTAGE.

---

IN WITNESS WHEREOF, the undersigned have set their hands hereunto as of the date written below

_(signature)_                                    10-13-11    (Seal)

FREDERICK SHARPE  -Borrower / Date

_(signature)_                                    10-13-11    (Seal)

RENEE SHARPE  -Borrower / Date


American Home Mortgage Servicing, Inc.

By:

**Loan Modification Agreement**
**Schedule A**

Name of Borrower(s): FREDERICK SHARPE and RENEE SHARPE
Loan Number ██████████

| DESCRIPTION OF TOTAL | AMOUNT DUE |
|---|---|
| Current Principal Balance | $132,442.57 |
| Total Amount Capitalized | $40,668.05 |
| NEW PRINCIPAL BALANCE | $173,110.62 |

**BALLOON LOAN DISCLOSURES** (if applicable)

| | |
|---|---|
| Amortizing Amount | $173,110.62 |
| Deferment Amount | $0.00 |
| Total Balloon Payment* | $0.00 |

* The Balloon Payment is subject to change if your loan contains a variable rate feature.

| ITEMIZATION OF AMOUNT DUE | | | Deferred Amount | Total Amount Due |
|---|---|---|---|---|
| Delinquent/Unpaid Interest | From | January 1, 2009 | | |
| | To | September 30, 2011 | $0.00 | $25,236.35 |
| Foreclosure Attorney Fees | | | $0.00 | $4,923.00 |
| Foreclosure Costs | | | $0.00 | $2,071.81 |
| Interest on Secured Advances | | | $165.33 | $165.33 |
| Accrued Late Charges | | | $1,522.65 | $1,522.65 |
| Modification Fee / Document Preparation Fee | | | $650.00 | $650.00 |
| NSF Check Fees | | | $20.00 | $20.00 |
| Property Inspections | | | $0.00 | $163.20 |
| Delinquent Taxes/Unpaid Insurance | | | $0.00 | $7,873.69 |
| Property Valuations | | | $0.00 | $400.00 |
| **TOTALS** | | | **$2,357.98** | **$43,026.03** |
| | Borrower Contribution | | | $0.00 |
| | Mortgage Insurance Contribution | | | $0.00 |
| | Total Deferred Amount | | | $2,357.98 |
| | Amount towards 1st payment due | | | $0.00 |
| | Total Amount Capitalized | | | $40,668.05 |

| New Principal and Interest Payment Effective: ** November 1, 2011 | $717.27 |
|---|---|
| Monthly Tax Payment*** | $275.40 |
| Monthly Insurance Payment *** | $138.40 |
| Monthly Mortgage Insurance Payment | $0.00 |
| Total Payment | $1,131.07 |

** If your loan contains a variable rate feature, your monthly principal and interest payment is subject to change based on the terms of the Note and Modification Agreement.
*** Includes estimated amount for the monthly escrow payment (which is subject to change).

Borrower Initials here: _____  ___  ___  ___

8389 09/11

## ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number ████████                                      Date  October 04, 2011

Borrower(s)    FREDERICK SHARPE and RENEE SHARPE

Property Address       574 E. LINCOLN HWY, COATESVILLE, PA 19320

Servicer  American Home Mortgage Servicing, Inc.

In consideration of American Home Mortgage Servicing, Inc. (the "Servicer") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Servicer, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Servicer, to enable Servicer to modify the Loan in accordance with the guidelines, guidance, or required servicing standards ("Servicing Standards") of (a) an investor, note holder, guarantor, or mortgage insurer associated with the Loan, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs, or any municipal bonding authority, or (b) any Making Home Affordable program, including without limitation the Home Affordable Modification Program.

The Borrower agrees to comply with all such requests made by the Servicer within 30 days of receipt of written request from the Servicer.  Borrower agrees to assume all costs that may be incurred by the Servicer, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable under the Servicing Standards.


_____          10/13/11
FREDERICK SHARPE                                      Date


_____          10-13-11
RENEE SHARPE                                          Date


_____
                                                     Date


_____
                                                     Date


2001 09/11                                            Errors and Omissions/Compliance Agreement

After Recording Return To:
**Rushmore Loan Management Services LLC**
**1755 Wittington Place Ste. 400**
**Farmers Branch, TX 75234**
**1-888-504-6700**

**This Document Prepared By**:
**ENRIQUE ALMARAZ**
**Rushmore Loan Management Services LLC**
**15480 Laguna Canyon Road**
**Irvine, California 92618**

Parcel ID Number: ▮▮▮▮▮

_____ [Space Above This Line For Recording Data] _____
Original Loan Amount: **$108,000.00**                                    Loan No: ▮▮▮▮▮

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **20th** day of **August, 2018**, between **FREDERICK SHARPE AND RENEE SHARPE** ("Borrower") and **Owner, by and through Rushmore Loan Management Services LLC, as current servicer and agent**, whose address is **1755 Wittington Place Ste. 400, Farmers Branch, TX 75234** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **June 27, 2007** and recorded in Book/Liber **7212**, Page **927**, Instrument No: **10770994**, of the Official Records of **CHESTER County, PA** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

### 574 E LINCOLN HWY, COATESVILLE, PA 19320,
(Property Address)
the real property described being set forth as follows:

**AS SET FORTH IN THE MORTGAGE**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of **August 20, 2018**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$120,000.00**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.500%**, from **September 1, 2018**. Borrower promises to make monthly payments of principal and interest of U.S. **$567.91**, beginning on the **1st** day of **October, 2018**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.   The yearly rate of **4.500%** will remain in effect until principal and interest are paid in full. If on **September 1, 2053** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    (b)   all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

    (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)  Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging [ ].

6. Notwithstanding anything to the contrary contained in this Agreement, if a discharge has been granted, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security

Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
**FREDERICK SHARPE** -Borrower

_____ (Seal)
**RENEE SHARPE** -Borrower

_____ [Space Below This Line For Acknowledgments] _____

COMMONWEALTH OF PENNSYLVANIA, _CHESTER_____ County ss:

On this, the _07_ day of _SEPTEMBER_, 20 _18_, before me, the undersigned officer, personally appeared
_FREDERICK SHARPE_
_RENEE SHARPE_

satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the written instrument and acknowledged that he/she/they executed the same for the purpose herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My commission expires:___JULY 26, 2021_____

Commonwealth of Pennsylvania – Notary Seal
PORTIA NICHELLE GRAHAM – Notary Public
Chester County
My Commission Expires Jul 26, 2021
Commission Number 1317361

Signature of Notary _Commonwealth of Pennsylvania_
Title of Officer _Notary Public_

Origination Company: **Rushmore Loan Management Services LLC**
NMLSR ID: **185729**

This is the section
that the notary
missed.

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrun
Mortgage Cadence Document Center  © 8862 08/14

**Rushmore Loan Management Services LLC**

By: _____ (Seal) - Lender

Name: _____

Title: _____ Tim Lightfoot  Vice President

SEP 11 2018
_____

Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

Texas _____ , _____ Dallas _____ County ss:

On this, the _____ day of ___ SEP 11 2018 ___, 20____, before me, the undersigned officer,
personally appeared

Tim Lightfoot _____ , the _____ Vice President _____ of

_____ Rushmore Loan Management Services, LLC

satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the written instrument and
acknowledged that he/she/they executed the same for the purpose herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My commission expires:_____ 9/21/2021



Signature of Notary
Stacey Burdett

Title of Officer

STACEY BURDETT
Notary Public, State of Texas
Comm. Expires 09-21-2021
Notary ID 131289531

## CERTIFICATE OF RESIDENCE

I, _____ __**Tim Lightfoot**__ _____ . _____
Agent of Lender

do hereby certify that the precise address of the within-named lender is:

**Rushmore Loan Management Services LLC**
**1755 Wittington Place Ste. 400,**
**Farmers Branch, TX 75234**

Witness my hand this ____ day of _____ **SEP 11 2018** ____ .

_____
Signature of Agent of Lender

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument - Pennsylvania
Mortgage Cadence Document Center  © 8862 08/14

Form 3179 1/01 (rev. 4/14)
(page 6 of 6)

## ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number:

FHA/VA Case Number:

Borrower(s):   **FREDERICK SHARPE and RENEE SHARPE**

Property Address:   **574 E LINCOLN HWY, COATESVILLE, PA 19320**

Servicer:   **Rushmore Loan Management Services LLC**

The undersigned Borrower(s) for and in consideration of the above-referenced Servicer modifying the terms of your mortgage loan, agrees that if requested by your Servicer, to fully cooperate and adjust for clerical errors, any or all loan modification documentation deemed necessary or desirable in the reasonable discretion of Servicer to enable Servicer to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Department of Housing and Urban Development, or the Department of Veterans Affairs, or any Municipal Bonding Authority.

I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

The undersigned Borrower(s) agree(s) to comply with all above noted requests by the above-referenced Servicer within 15 days from date of mailing of said requests. Borrower(s) agree(s) to assume all costs including, by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to comply with correction requests in the above noted time period.

The undersigned Borrower(s) do hereby so agree and covenant in order to assure that this loan modification documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Servicer of its interest in and to said loan modification documentation, and to assure marketable title in the said Borrower(s).

DATED this **20th** day of **August, 2018**.

_____   (Seal)
**FREDERICK SHARPE** -Borrower

_____   (Seal)
**RENEE SHARPE** -Borrower

Loan No: ▮▮▮▮▮▮

## BALLOON ADDENDUM TO LOAN MODIFICATION AGREEMENT

### FREDERICK SHARPE AND RENEE SHARPE
### 574 E LINCOLN HWY
### COATESVILLE, PA 19320

THIS BALLOON ADDENDUM TO LOAN MODIFICATION AGREEMENT (the "Balloon Addendum") is made this **20**[TH] day of **August, 2018**, and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement (the "Modification Agreement" together, the "Agreements") entered into by the undersigned ("Borrower"), in favor of Owner, by and through **Rushmore Loan Management Services LLC**, as current servicer and agent for owner ("Lender"). The Agreements amend and supplement (1) the Mortgage, Deed of Trust or Security Deed and any applicable Riders (the "Security Agreement"), and (2) the Note bearing the same date as, and secured by, the Security Agreement.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Modification Agreement, Borrower and Lender further covenant and agree as follows:

1. In an effort to assist the borrower in meeting their monthly obligations and upon execution of the Agreements, Lender agrees to immediately forgive an amount equal to **$51,575.95** (the "Forgiven Amount").

2. In addition, Lender will agree to defer payment in the amount of **$0.00** (the "Balloon Amount"), which will be due and payable on the earliest of (a) the date the borrower sells or transfers an interest in the property, (b) the date the borrower pays the entire Interest Bearing Principal Balance, or (c) the maturity date of **September 1, 2053**. Lender will not charge interest on this Balloon Amount.

3. The payment of Principal and Interest listed in Paragraph 2 of the Modification Agreement is the payment necessary to amortize **$120,000.00**, which is the portion of the Unpaid Principal Balance not affected by the adjustments described in Paragraphs 1 and 2 of this Balloon Addendum.

The Agreements only modify the Security Agreement and Note in regard to the provisions addressed. All other terms and conditions of the Security Agreement and Note remain in full force and effect.

This transaction may include debt forgiveness. In some cases, debt forgiveness may be taxed as income. Please consult a tax advisor regarding any tax implications you may have due to this transaction.

BY SIGNING BELOW, Lender and Borrower accept and agree to the terms and provisions contained in this Balloon Addendum.

_____(Seal)
**FREDERICK SHARPE** –Borrower

_____(Seal)
**RENEE SHARPE** –Borrower


**Rushmore Loan Management Services LLC**

By:_____(Seal) - Lender
Name:                                    **Tim Lightfoot**
Title:                                   **Vice President**

SEP 1 1 2018

Date of Lender's Signature

# **EXHIBIT B**

Prepared By and Return To: Referral Department
GOLDBECK McCAFFERTY & McKEEVER
Mellon Independence Center - Suite 5000
701 Market Street
Philadelphia, PA 19106-1532
215-825-6344



GMM File Number: ▮▮▮▮

Parcel ID#: ▮▮▮▮  ✓



11014561
Page 1 of 3
LIBERTY BELL AGENCY, INC         05/24/2010 10:14A   B-7920 P-2351

This Document Recorded                          Doc Id: 11014561
05/24/2010    State RTT: 0.00                   Receipt #: 505879
10:14AM       Local RTT: 0.00                   Rec Fee: 52.00
Doc Code: ASM Chester County, Recorder of Deeds Office
Recorded Electronically by Simplifile



Ryan Costello
**RECORDER OF DEEDS**

# ASSIGNMENT OF MORTGAGE

**SAND CANYON CORPORATION F/K/A OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION**     (Assignor),
for and in consideration of the sum of   Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is acknowledged, does grant, bargain, sell, assign and transfer to **AMERICAN HOME MORTGAGE SERVICING, INC.**

**AMERICAN HOME MORTGAGE SERVICING, INC.**     (Assignee),
all of its right, title and interest, as holder of, in, and to the following described mortgage, the property described and the indebtedness secured by the mortgage:

Executed **FREDERICK SHARPE and RENEE SHARPE**, Mortgagor(s); to **OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION.** Bearing date of: **June 27, 2007**; Amount Secured: **$108,000.00**; Recorded on **July 16, 2007**; in **Book 7212, Page 927 Instrument #10770994**; in the Recorder of Deeds Office of **Chester** County, Commonwealth of Pennsylvania ("Mortgage")

Property: **574 East Lincoln Highway, Coatesville, PA 19320**

AS FURTHER DESCRIBED IN EXHIBIT "A", ATTACHED AND INCORPORATED INTO THIS ASSIGNMENT.

Together with the note or obligation described in the Mortgage endorsed to the Assignee,("Note") and all moneys due and to become due on the Note and Mortgage, with interest. Assignee its successors, legal representatives and assigns shall hold all rights under the Note and Mortgage forever, subject however, to the right and equity of redemption, if any, of the maker(s) of the Mortgage, their heirs and assigns forever.

Assignor, by its appropriate corporate officers, has executed and sealed with its corporate seal this Assignment of Mortgage on this **27** day of **APRiL**, 2010.

11014561

LIBERTY BELL AGENCY, INC          05/24/2010 10:14A   B-7920 P-2351

SAND CANYON CORPORATION F/K/A
OPTION ONE MORTGAGE CORPORATION,
A CALIFORNIA CORPORATION

(Affix Corporate Seal)

_____ (SEAL)
Name:      Kathy Smith
Title:       Assistant Secretary

_____ (SEAL)
Name:      Harold Nord III
Title:       Assistant Secretary

ss:
STATE OF ____Florida____ ) COUNTY OF ____Duval____ )

BE IT REMEMBERED, that on this **27** day of **APRiL**, 2010, before me, the subscriber, a
Notary Public personally appeared
____Kathy Smith____ AND ____Harold Nord III____
ASSt. Sec.                    ASST. SCC.
SAND CANYON CORPORATION F/K/A OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA
CORPORATION

officers of Assignor, who I am satisfied are the persons who signed the within instrument and they
acknowledged that they signed, sealed with the corporate seal and delivered the same as such officers
aforesaid, and that the within instrument is the voluntary act and deed of such corporation made by virtue
of a Resolution of its Board of Directors.

_____
Notary Public
My commission expires: **4-30-2013**

I hereby certify the address of the Assignee is:
~~4650 Regent Blvd, Irving TX 75063~~
1525 S Belt Line Rd, Coppell, TX 75019

NOTARY PUBLIC-STATE OF FLORIDA
Brenda L. Frazier
Commission # DD885641
Expires:  APR. 30, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

Case #: ▮

11014561
Page 3 of 3
LIBERTY BELL AGENCY, INC          05/24/2010 10:14A    B-7920 P-2351

# EXHIBIT "A"

ALL THAT CERTAIN lot or tract of land upon which is erected the East house of a block of two brick dwelling houses, designated as No. 574 East Lincoln Highway situated in the City (formerly the Borough) of Coatesville, Chester County, Pennsylvania, said lot or tract of land being composed of three adjoining lots or tracts of land, bounded and described together according to a recent survey thereof as follows:

BEGINNING at a point on the South curb line of East Lincoln Highway (formerly East Main Street) opposite the center of the middle dividing partition wall of said block of two brick dwelling houses, and distant 129, feet and 10½ inches West of the West curb line of Sixth Avenue; thence along the said South curb line of East Lincoln Highway, North 80 degrees 49 minutes East 32 feet to a point a corner of land now or late of Donald Ramaley; thence along the same and land now or late of John W. Doan, South 09 degrees 16 minutes East 140 feet to a point in a line of land now or late of John W. Doan; thence along the North end of a 4½ foot wide private alley, South 80 degrees 49 minutes West 4 feet and 6 inches; thence along the West line of said private alley, South 09 degrees 16 minutes East 60 feet more or less, to a point in the North line of Harmony Street; thence along the said North line of Harmony Street, South 80 degrees 49 minutes West 27 feet 6 inches to a point a corner of land now or late of Howard Johnson; thence along the same and passing through the center of the middle dividing partition of said block of two brick dwelling houses, North 09 degrees 16 minutes West 200 feet, more or less to the place of beginning.

BOUNDED on the North by the South curb line of East Lincoln Highway; on the East by land now or late of Donald Ramaley, land now or late of John W. Doan and the West line of said private alley; on the South by the North end of said private alley and the North line of Harmony Street; and on the West by land now or late of Howard Johnson.

CONTAINING 6,130 square feet of land, be the same more or less.

Property Parcel Number ▮▮▮▮

10770994
Page 18 of 16
B-7212 P-927
RELIANCE ABSTRACT          07/18/2007 08:36A



**RECORDER OF DEEDS**

Recording Requested By:

Roosevelt Management
Company LLC

**When Recorded Return to:**
T.D. Service Company- 671
4600 W Metropolitan Dr., Suite 400
Orange, CA 92868

*RETURN TO*

Customer#: ███        Service#: █████████
Loan#: ████████████

### ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **AMERICAN HOME MORTGAGE SERVICING, INC.**, whose post office address is **4600 Regent Blvd, Suite 200, Irving, TX 75063**, by these presents does convey, grant, bargain, sell, assign, transfer and set over to: **SAND CANYON CORPORATION, 7595 Irvine Center Drive, Suite 100, Irvine, CA 92618-0000** the described Mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon. Said Mortgage is recorded in the State of **PENNSYLVANIA**, City of **COATESVILLE**, County of: **CHESTER** Official Records, dated **JUNE 27, 2007** and recorded on **JULY 16, 2007**, as **Instrument No. 10770994, in Book 7212, Page 927.** OPI#: ███████
Original Mortgagor: **FREDERICK SHARPE AND RENEE SHARPE.**
Original Mortgagee: **OPTION ONE MORTGAGE CORPORATION.**

Date:  January 25th, 2013

**AMERICAN HOME MORTGAGE SERVICING, INC.**

By: _Roger Kistler_
    (Name, Title): Roger Kistler / Vice President

State of  TEXAS
County of  DALLAS } ss.

On January 25, 2013 before me, _Johna Christine Elliott_ a Notary Public, personally appeared Roger Kistler, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

(Notary Name): _Johns Christine Elliott_
My commission expires:  8-25-14

JOHNA CHRISTINE ELLIOTT
MY COMMISSION EXPIRES
August 25, 2014

11291615  B: 8771 P: 1972 ASM
07/22/201311:50 AM      Page 1 of 1
TD SERVICE

DOC # 11291615  07/22/201311:50 AM
Receipt #:13-30511
Rec Fee: $82.00

**Chester County, Recorder of Deeds**

Record lot

Recording Requested By:

Prepared By:
**T.D. Service Company**
**4000 W Metropolitan Dr Ste 400**
**Orange, CA 92868**
**(714) 543-8372, JENNIFER R FUENTES**


RECORDER OF DEEDS

RETURN TO

**When Recorded Return to:**
T.D. Service Company-671
4000 W Metropolitan Dr., Suite 400
Orange, CA 92868

**(714) 543-8372**



**BEING UPI#** ▮▮▮▮ ✓
Property Address:  **574 E LINCOLN HWY, COATESVILLE, PA 19320-0000.**

Space above for Recorder's use

Customer#: ▮▮  Service#: ▮▮▮
Loan#: ▮▮▮▮▮

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **SAND CANYON CORPORATION, 7595 IRVINE CENTER DRIVE SUITE 100, IRVINE, CA 92618-0000**, by these presents does convey, grant, bargain, sell, assign, transfer and set over to: **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2012-5T, 60 LIVINGSTON AVENUE EP-MN-WS3D, ST. PAUL, MN 55107-0000**, the described Mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$108,000.00** is recorded in the State of **PENNSYLVANIA, CITY of COATESVILLE**, County of **CHESTER** Official Records, dated **JUNE 27, 2007** and recorded on **JULY 16, 2007, as Instrument No. 10770994, in Book No. 7212, at Page No. 927.**
Original Mortgagor: **FREDERICK SHARPE AND RENEE SHARPE.**
Original Mortgagee: **OPTION ONE MORTGAGE CORPORATION.**

DOC # 11291616  07/22/2013 11:50 AM
Receipt #:13-30511
Rec Fee: $82.00
Chester County, Recorder of Deeds

11291616  B: 8771 P: 1973  ASM
07/22/2013 11:50 AM      Page 1 of 2
TD SERVICE

Record 2nd

Loan#: ▮▮▮▮    Srv#: ▮▮▮▮
Page 2

Date: _1/29/2013_

**SAND CANYON CORPORATION, BY ROOSEVELT MANAGEMENT COMPANY LLC ITS
APPOINTED ATTORNEY-IN-FACT**

Power of Attorney was recorded simultaneously herewith.

By: _____
    **Linda Genneken Chapa, Vice President**

State of    **TEXAS**             }
County of   **DALLAS**            } ss.

On _1/29/2013_ before me, the undersigned officer, personally appeared Linda Genneken Chapa, who
acknowledged herself/himself to be the **Vice President of SAND CANYON CORPORATION, BY
ROOSEVELT MANAGEMENT COMPANY LLC ITS APPOINTED ATTORNEY-IN-FACT**, who proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies)
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

Witness my hand and official seal.

_____
(Notary Name): _____
My commission expires: _____

ROSEMARY RODRIGUEZ
Notary Public, State of Texas
My Commission Expires
March 01, 2014

I hereby certify that the precise address of the within named assignee is: 60 LIVINGSTON AVENUE
EP-MN-WS3D, ST. PAUL, MN 55107-0000

By: _____
    **Linda Genneken Chapa, Vice President**

11291616  B: 8771 P: 1974  ASM
07/22/201311:50 AM      Page 2 of 2
TD SERVICE

35589426 B-9825 P-1499 RGM
06/03/2019 08:48:46 AM Page 1 of 3
Rec Fees: $76.00    State: $0.00
Rick Loughery Recorder of Deeds, Chester County, PA



RECORDER OF DEEDS

Prepared By:
Roosevelt Management Company, LLC

When recorded mail to:
Abstrax, LLC
Attn: Collateral Dept.
88 Silva Lane, 2nd Floor
Middletown, RI 02842

Loan Number: █████████

### ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, U.S. Bank, National Association, Not In Its Individual Capacity, But Solely as Trustee for the RMAC Trust, SERIES 2012-5T by Rushmore Loan Management Services LLC its appointed attorney in fact, whose address is 60 Livingston Avenue, Saint Paul, MN 55107, hereby assign and transfer to MTGLQ Investors, L.P., whose address is 6011 Connection Drive, Irving, TX 75039, all its right, title and all beneficial interest in and to a certain Mortgage and Note, executed by Frederick Sharpe and Renee Sharpe to Option One Mortgage Corporation, a California Corporation and bearing the date of June 27, 2007 and recorded on July 16, 2007, with an original loan amount of $108,000.00 in the office of the Recorder of Chester County, State of PA, in Book 7212 at Page 927 or Instrument # 10770994.

Property Address: 574 E Lincoln Hwy, Coatesville, PA 19320
Parcel ID: █████████
Legal Description: See attached Exhibit A.

IN WITNESS WHEREOF, ASSIGNOR HAS EXECUTED THIS INSTRUMENT AS OF THE _06_ DAY OF _Sept_ , 2017.

CERTIFICATE OF RESIDENCE

I, the undersigned, do certify that the assignee's precise address is 6011 Connection Drive, Irving, TX 75039.

Witness my hand this date: SEP 06 2017

Signature: _____

Printed Name: **Tim Lightfoot**

U.S. Bank, National Association, Not In Its Individual Capacity, But Solely as Trustee for the RMAC Trust, SERIES 2012-5T by Rushmore Loan Management Services LLC its appointed attorney in fact

By: _____

Name: **Tim Lightfoot**

Title: **Vice President**

ATTESTED BY:

BY: _____

NAME: Brooke Elsing

State of Texas
County of _Dallas_

Before me, **Bradley J Gorz** _____, on this day personally appeared **Tim Lightfoot** _____, known to me (or proved to me on the oath of _____ or through _____ to be the person whose name is subscribed to the foregoing instrument and acknowledge to me that he/she/they/ executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _06_ day of _Sept_, 20 _17_



(SEAL)

_____
Notary Public Signature

BRADLEY J. GORZ
Notary Public, State of Texas
Comm. Expires 01-16-2021
Notary ID 130963867

Unofficial Copy

Unofficial Copy

**EXHIBIT A**

ALL THAT CERTAIN lot or tract of land upon which is erected the East house on a block of two brick dwelling houses, designated as No. 574 East Lincoln Highway situated in the City (formerly the Borough) of Coatesville, Chester County, Pennsylvania, said lot or tract of land being composed of three adjoining lots or tracts of land, bounded and described together according to a recent survey thereof as follows:

BEGINNING at a point on the South curb in line of East Lincoln Highway (formerly East Main Street) opposite the center of the middle dividing partition wall of said block of two brick dwelling houses, and distant 129, feet and 10 1/4 inches West of the West curb line of Sixth Avenue; thence along the said South curb line of East Lincoln Highway, North 80 degrees 49 minutes East 32 feet to a point a corner of land now or late of Donald Ramaley; thence along the same and land now or late of John W. Doan, South 09 degrees 16 minutes East 140 feet to a point in a line of land now or late of John W. Doan thence along the North end of a 4 1/2 foot wide private alley, South 80 degrees 49 minutes West 4 feet and 6 inches; thence along the West line of said private alley, South 09 degrees 16 minutes East 60 feet more or less, to a point in the North line of Harmony Street; thence along the said North line of Harmony Street,  South 80 degrees 49 minutes West 27 feet 6 inches to a point a corner of land now or late of Howard JOhson; thence along the same and passing through the center of the middle dividing partition of said block of two brick dwelling houses, North 09 degrees 16 minutes West 200 feet, more or less to the place of beginning.

BOUNDED on the North by the South curb line of East Lincoln Highway; on the East by land now or late of Donald Ramaley, land now or late of John W. Doan and the West line of said private alley; on the South by the North end of said private alley and the North line of Harmony Street; and on the West by land now or late of Howard Johnson.

CONTAINING 6,130 square feet of land, be the same more or less.

Property Parcel Number 

Property Address: 574 E Lincoln Hwy, Coatesville, PA 19320

FORM OF LOST NOTE AFFIDAVIT

| STATE OF | TEXAS | ) | |
|---|---|---|---|
| | | | SS.: |
| COUNTY OF | DALLAS | ) | |

____**Drew Edwards**____, being duly sworn, deposes and says that he/she is an
____**Assistant Vice President**____, of **Rushmore Loan Management Services LLC,** servicer for **U.S. Bank, National Association, not in its individual capacity, but solely as Trustee for the RMAC Trust, Series 2012-5T.** (the "Company") and:

1.  That, after having conducted a diligent investigation in its records and files, the Company has been unable to locate the following original note and believes that said original note has either been lost, misfiled, misplaced or destroyed:

A note in the original principal sum of **$108,000.00** made by **Frederick Sharpe and Renee Sharpe** to **Option One Mortgage Corporation, a California Corporation** and dated **6/27/2007.**

2.  That the records of the Company do not show that such note was ever released, paid off, satisfied, assigned, transferred, pledged, hypothecated or otherwise disposed of and that such note has been either lost, mislaid, misfiled or destroyed by the Company;

3.  That the Company is aware that **U.S. Bank, National Association, not in its individual capacity, but solely as Trustee for the RMAC Trust, Series 2012-5T** its successors, assigns and/or transferees (collectively, the "Owner") rely upon the statements made herein as to such note having been lost, mislaid, misfiled or destroyed by the Company and never having been released, paid off, satisfied, assigned, transferred, pledged, hypothecated or otherwise disposed of;

4.  Attached hereto is a true and correct copy of said mortgage note as in effect on the date hereof;

5.  In the event that the Company should ever locate said mortgage note, the Company agrees to provide said note to the Owner;

6.  The Company hereby indemnifies and holds the Owner harmless from and against any and all losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from (a) the Company's breach of any covenant, representation or warranty contained herein, (b) the assertion or claim of

any third party that it is the holder of the mortgage note, or (c) the loss, misplacement or destruction of the original mortgage note.

IN WITNESS WHEREOF, the undersigned has executed this instrument on behalf of the Company, this __3__ day of _November_ 2016

> **U.S. Bank, National Association, not in its individual capacity, but solely as Trustee for the RMAC Trust, Series 2012-5T**, by Rushmore Loan Management Services LLC, as its Attorney in Fact
>
> _____
> Signature
>
> Name:    Drew Edwards
> Title:    Assistant Vice President

## ACKNOWLEDGMENT

State of  TEXAS    ) SS:
County of   DALLAS

On 11|3|16 , before me the undersigned, a notary public in and for said state, personally appeared _____**Drew Edwards**_____, personally known to me to be the duly authorized person who executed the within instrument on behalf of Rushmore Loan Management Services LLC, and acknowledged/sworn to me that such _____**Assistant Vice President**_____, executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

Witness my hand and official seal.

_____
Notary Public in and for said County and State
My commission expires on:    APR 0 8 2017

BRADLEY J. GORZ
Notary Public, State of Texas
Comm. Expires 04-08-2017
Notary ID 128379135

Loan Number: [REDACTED]    .vicing Number: [REDACTED]    . Date: 06/27/07

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL
BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO
OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED
TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR WILL HAVE TO FIND A
LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU
THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR
ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN
REFINANCING FROM THE SAME LENDER.

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY
MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

574    E LINCOLN HWY,    COATESVILLE, PA 19320-3414
[Property Address]

1.    **BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S.    $108,000.00    (this amount
is called "principal"), plus interest, to the order of the Lender. The Lender is
Option One Mortgage Corporation, a California Corporation
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to
receive payments under this Note is called the "Note Holder."

2.    **INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated
on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of    10.850%    . The interest rate
I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default
described in Section 7(B) of this Note.

3.    **PAYMENTS**  **BALLOON NOTE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF**
**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on  August 01    ,  2007    .
I will make these payments every month, in addition to a final Balloon Payment payable at Maturity as referenced in the attached
Balloon Note Addendum, until I have paid all of the principal and interest and any other charges described below that I may owe
under this Note. My monthly payments will be applied to interest before principal. If, on,
July 01    ,  2037    , I still owe amounts under this Note, I will pay those amounts in full on that
date, which is called the "Maturity Date."
I will make my monthly payments at    Option One Mortgage Corporation
P.O. BOX 92103 LOS ANGELES, CA 90009-2103
or at a different place if required by the Note Holder.
**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S.    $980.93    . This amount may change.
**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must
pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with
Section 4 of this Note.
**(D) Application of Payments**
Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note;
(ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal
due under this Note; and (v) late charges due under this Note.

4.    **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of    July 01    .    2009    ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank
offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street
Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which
the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.
The Note Holder will give me notice of this choice.

PENNSYLVANIA ADJUSTABLE RATE BALLOON NOTE-LIBOR INDEX - Single Family
Page 1 of 3    PANT051.wp (03-08-07)

Loan Number: ▮▮▮▮▮▮        Servicing Number: ▮▮▮▮▮▮▮▮        Date: 06/27/07

**(C) Calculation of Changes** **\*\*BALLOON NOTE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF\*\***

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 20/100                                    percentage point(s) ( 6.200%        ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than        12.350%        or less than 6.200%            . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one and a half percentage points (1.5%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than        16.850%    or less than        6.200%

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at anytime before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayment without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**\*\*PREPAYMENT CHARGE NOTE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF\*\*** .

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  6.000%        of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

**(C) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, whether or not a lawsuit is filed. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

Loan Number: ███████    Servicing Number: ███████    ✓ Date: 06/27/07

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)       _____ (Seal)
FREDERICK  SHARPE        -Borrower                               -Borrower

_____ (Seal)       _____ (Seal)
RENEE  SHARPE            -Borrower                               -Borrower

_____ (Seal)       _____ (Seal)
                        -Borrower                               -Borrower

[Sign Original Only]

Page 3 of 3                                    PANT051.wp (03-08-07)

Loan Number: ▋▋▋▋▋     Servicing Number: ▋▋▋▋▋     Date: 06/27/07

# PREPAYMENT CHARGE NOTE ADDENDUM

For value received, the undersigned (the "Borrower") agree(s) that the following provisions shall be incorporated into and shall be deemed to amend and supplement the Note made by the Borrower in favor of   Option One Mortgage Corporation, a California Corporation
(the "Lender"), and dated as of even date herewith (the "Note"). To the extent that the provisions of this Prepayment Charge Note Addendum (the "Addendum") are inconsistent with the provisions of the Note, the provisions of this Addendum shall prevail over and shall supersede any such inconsistent provision on the Note

Section 5 of the Note is amended to read in its entirety as follows:

### 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment." When I make a Full Prepayment or Partial Prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a Partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If within   24 Months    from the date of execution of the Security Instrument I make a Full Prepayment or, in certain cases a Partial Prepayment, I will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to six (6) months' advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. In no event will such a charge be made unless it is authorized by state or federal law.


Borrower FREDERICK  SHARPE          Date 6-27-07          Borrower          Date

Borrower RENEE  SHARPE          Date 6 27-07          Borrower          Date

Borrower          Date          Borrower          Date

MULTISTATE PREPAYMENT CHARGE NOTE ADDENDUM - ADJUSTABLE RATE
Page 1 of 1

USP1021.wp (05-04-07)

Loan Number: ████████        Servicing Number: ████████        Date: 06/27/07

# BALLOON NOTE ADDENDUM

This is a BALLOON LOAN. The term of the loan is 50/30 years. This means that while your monthly payment amount is amortized in accordance with a 50 year loan term, the loan is payable in full in THIRTY (30) years from the date the loan is made. As a result, you will be required to repay the entire remaining principal balance, together with accrued interest, late charges, if any, and all advancements made by the lender under the terms of this loan in THIRTY (30) years from the date on which the loan is made.

The lender has no obligation to refinance this loan at the end of its term. Therefore, you may be required to repay the loan out of other assets you may own, or you may have to find another lender willing to refinance the loan.

Assuming this lender or another lender refinances this loan at maturity, you will probably be charged interest at market rates prevailing at that time which may be considerably higher or lower than the interest rate paid on this loan. You may also have to pay some or all of the closing costs normally associated with the new mortgage loan even if you obtain refinancing from the same lender.


Borrower FREDERICK SHARPE          Borrower


Borrower RENEE SHARPE          Borrower


Borrower          Borrower


MULTISTATE BALLOON NOTE ADDENDUM
Page 1 of 1                                    USD5641.wp (01-12-07)